IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORIS G. ROGERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-1389 |
| | § | |
| KBR TECHNICAL SERVICES, INC., | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Plaintiff, Noris G. Rogers, proceeding *pro se*, sued KBR Technical Services, Inc. and the United States Army Field Support Command. Rogers alleges that he was employed by KBR Technical Services and worked in Afghanistan; that he was not paid overtime rates or wages required under his Employment Agreement; that he was discriminated against because he was not promoted; that he was fired for attempting to modify wages and working conditions; that defendants misrepresented the living conditions and the income he would receive in Afghanistan; and that he suffered disabling injuries during his work. Rogers asserts causes of action for breach of contract, employment discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, wrongful termination/libel, a violation of 10 U.S.C. § 2409, false arrest and detention, and deceptive trade practices.

KBR has moved to compel Rogers to arbitrate under the company's dispute resolution program and to stay or dismiss the claims asserted against KBR in this lawsuit pending the

arbitration. (Docket Entry No. 21). In response, Rogers has moved for a jury trial, (Docket Entry No. 22), and to require the defendants to appear *pro se*, (Docket Entry No. 24). Both defendants have filed responses.

Based on the pleadings, the motions and responses, the parties' submissions, and the applicable law, this court denies Rogers's motion to require the defendants to appear without counsel, grants KBR's motion to compel arbitration, dismisses Rogers's claims against KBR in favor of arbitration, and denies Rogers's motion for jury trial. The reasons are explained below.

## I.  Background

Rogers attached his EEOC charge to his complaint. In the charge, dated December 19, 2005, he stated that he was employed by KBR Technical Services as an electrician on August 2005. He alleged that from September 1, 2005 to October 1, 2005, he applied for promotions to supervisory positions, without success. He resigned on November 19, 2005, effective December 25, 2005, specifying the terms of his separation from KBR. Rogers alleged that KBR fired him on November 20, 2005 for the stated reason that he violated company policy. Rogers asserted discrimination because he is African American. Rogers received a right to sue letter and filed this suit.

In support of its motion to compel arbitration and to dismiss the claims in this lawsuit, KBR submitted a declaration from Cheryl Nethery, a Human Resources Generalist for KBR Technical Services, Inc. (Docket Entry No. 21, Ex. A). She explained that KBR is an agent

for recruiting, travel, and visa processing for Service Employees International Inc. (SEII), which, like KBR, is a Halliburton affiliate. SEII was the corporate entity that hired Rogers to work as an electrician in Afghanistan in August 2005. Nethery attached the Employment Agreement Rogers signed. Paragraph 26 of the Agreement states that the employee agrees to "be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference." The Agreement continued:

> You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer [defined as Service Employees International Inc.] related to your employment, including your termination, and any and all personal injury claim arising in the workplace, you have against other parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system.
>
> . . . .
>
> It is expressly understood that, in the case of any controversy described above, all parent, subsidiary and affiliate or associated corporations of Employer, and of their officers, directors, employees, insurers and agent are third party beneficiaries to this provision and are entitled to invoke, enforce and participate in arbitration pursuant to this provision.

(Docket Entry No. 21, Ex. A-1 at 12 ¶ 26). The Agreement specified that the law applicable to Paragraph 26 was the Federal Arbitration Act.

KBR also attached a copy of the Halliburton Dispute Resolution Program, which ends with binding arbitration. (Docket Entry No. 21, Ex. B-1). Under the Program, the employer pays the administrative expenses except for a $50 filing fee, and provides up to $2,500 per

year to allow employees to consult with their chosen attorney. (*Id.*).

Finally, KBR attached documents showing that Rogers participated in mediation under the Dispute Resolution Program; that Rogers asked for and was provided money to held cover the cost of consulting with counsel; and Rogers filed an arbitration demand with the American Arbitration Association, stating that he was a party to an arbitration agreement. (Docket Entry No. 21, Exs. B-3, B-4, C-1). That proceeding was closed in April 2006 because Rogers did not pursue it. Instead, Rogers filed this suit.

## II.     The Applicable Legal Standards

The Federal Arbitration Act (the "FAA") provides in pertinent part that:

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA "place[s] arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

The FAA also provides for a stay in federal district court proceedings when an issue in the proceeding is referable to arbitration:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in

>accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

To decide whether parties must submit to arbitration, a court's first task is to determine whether the parties agreed to arbitrate the dispute at issue. *See OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001); *Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000). This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. A court uses contract construction rules to analyze the scope of the arbitration clause, then examines whether the specific disputes fall within that scope. *Id.* at 794–95. That "inquiry is not guided by the legal labels attached to the plaintiffs' claims; rather, it is guided by the factual allegations underlying those claims." *Id.* at 795.

A court must remain "mindful of the strong federal policy favoring arbitration." *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 408 (5th Cir. 1990). The preference for arbitration is such that any "[d]oubts as to the availability of arbitration must be resolved in favor of arbitration." *Id.* The duty to arbitrate remains one of contract; a court will not compel parties to arbitrate a dispute unless the parties agreed to do so. *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) ("A party cannot be compelled to submit a dispute to arbitration unless there has been a contractual agreement to do so.").

"[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (citing *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (comparing "relating to" language with "arising out of" language)). "Broad arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* An "arbitration clause that cover[s] disputes 'arising under' an agreement, but omitt[ing] reference to claims 'relating to' an agreement, cover[s] only those disputes 'relating to the interpretation and performance of the contract itself.'" *Tracer Research Corp.*, 42 F.3d at 1295 (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)).

### III.  Analysis

As a threshold matter, this court denies Rogers's motion to require the defendants to appear without counsel. The fact that Rogers is *pro se* does not provide a basis to require the defendants to proceed on a similar basis. Moreover, the law precludes a corporation or artificial entity from proceeding *pro se*. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993).

The Employment Agreement between Rogers and SEII contains a broad arbitration

clause. It covers "any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim arising in the workplace, you have against other parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system." (Docket Entry No. 21, Ex. A-1 at 12 ¶ 26). It is clear that Rogers's claims against KBR are within the scope of this broad arbitration clause.

Rogers argues that the Employment Agreement does not involve commerce and is not subject to the Federal Arbitration Act. He asserts that although his Employment Agreement with SEII is predicated on an underlying contract with the United States Army – identified in the Agreement as DAAA09-02-D0007 – that contract is between Brown & Root Services and the Army, not SEII and the Army.

Rogers's argument does not lead to the conclusion that the Employment Agreement does not involve commerce. The Employment Agreement specifically stated that Rogers's employment is "in support of the U.S. Army's Area of Operation under the U.S. Contract DAAA09-02-D0007." The Agreement called for Rogers to travel to Afghanistan to work there. The underlying contract need not be between the Army and SEII for the Employment Agreement to involve commerce under 9 U.S.C. § 1.

Rogers also argues that SEII cannot enforce the Employment Agreement. Rogers's argument does not take into account the Agreement's provision that affiliated and related companies – which includes KBR – may enforce the arbitration provision of the Agreement.

The Agreement specifically states that all "parent, subsidiary and affiliate or associated corporations of Employer" are entitled to enforce the arbitration provision. (Docket Entry No. 21, Ex. A-1 ¶ 26). As an affiliated corporation of SEII, KBR is among those parties entitled to enforce the clause.

Rogers does not deny that he entered into the Employment Agreement. He does argue that he is entitled to have a jury determine his claim that he signed the Employment Agreement under duress and that it is unconscionable. Rogers invokes 9 U.S.C. § 4 and the Seventh Amendment to the United States Constitution in support of his argument. The Supreme Court and the Fifth Circuit have rejected similar arguments. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991), the Supreme Court rejected an employee's argument that an arbitration clause was unconscionable because of an inequality in bargaining power. Rogers argues that the Employment Agreement as a whole is invalid because of duress and unconscionability. The Federal Arbitration Act requires that such attacks on the formation and validity of an agreement containing an arbitration provision be heard by an arbitrator, not the court. *Rojas v. TK Commc'ms, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996) (citing *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)). An arbitration agreement waives the Seventh Amendment jury trial right. *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002).

Rogers invoked the arbitration clause and the Dispute Resolution Program that he now challenges. His challenges are foreclosed by the Federal Arbitration Act and the cases that

apply the statute. Rogers's claims against KBR are dismissed in order to permit the contractually provided arbitration to proceed; Rogers's claims that the Employment Agreement is unenforceable because of duress or unconscionability may be raised in the arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir. 1991).

Rogers's claims against the United States remain in the case. Rogers's motion for a jury trial with respect to those claims is denied. The United States has not provided for a jury trial in any statute that waives sovereign immunity to permit Rogers to assert his claims. *Lehman v. Nakshian*, 453 U.S. 156 (1981) (holding that the right to a jury trial in an action against the United States will be found "only where Congress has affirmatively and unambiguously granted that right by statute.").

## IV. Conclusion

KBR's motion to compel arbitration and to dismiss the claims Rogers asserts against it in this lawsuit is granted. Rogers's motions to require defendants to appear *pro se* and for a jury trial are denied. Rogers and counsel for the United States will appear at the previously scheduled initial pretrial conference on August 25, 2006.

At the initial pretrial conference set for August 25, 2006, this court will address Rogers's claims against the United States and set a schedule for resolving them.

SIGNED on July 17, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge