IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

NORIS G. ROGERS,                   §
                                   §
              Plaintiff,           §
                                   §
v.                                 §        CIVIL ACTION NO. H-06-1389
                                   §
THE UNITED STATES ARMY,            §
                                   §
              Defendant.           §

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Noris G. Rogers, proceeding pro se, seeks damages
from defendant, the United States Army, for breach of contractual
agreement to pay Davis-Bacon Act wage rates, reprisal, personal
injury, and illegal arrest and detention suffered while working for
a government contractor in Afghanistan.  Pending before the court
is Plaintiff's Motion to Transfer Case to the United States Court
of Federal Claims (Docket Entry No. 52), and Defendant's Motion to
Dismiss, or Alternatively, Motion for Summary Judgment (Docket
Entry No. 54).  For the reasons explained below defendant's motion
to dismiss will be granted, plaintiff's motion to transfer will be
denied, and this action will be dismissed.

## I.  Background

Plaintiff's Original Complaint contains seven separate counts:
(1) breach of contract, (2) employment discrimination, (3) wrongful
termination/libel, (4) prohibition of reprisals, (5) illegal arrest

and detention, (6) injury, and (7) deceptive trade practices.[1]  The
Second Count for employment discrimination, the Third Count for
wrongful/termination/libel, and the Seventh Count for deceptive
trade practices were asserted only against plaintiff's employer,
Kellogg Brown & Root Technical Services, Inc. (KBR).  Plaintiff
sought judgment declaring his employment agreement with KBR void,
judgment against KBR in the amounts of $39,371.90 for overtime and
prevailing wages and $178.80 for work area differential uplift pay,
and judgment against KBR and the United States in the amount of
$2,500,000 for personal injury, pain and suffering, mental anguish,
defamation/libel, and an unspecified amount for "all medical cots
and other expenses," reasonable attorney's fees, and costs.[2]  In
the Memorandum and Order entered on July 17, 2006 (Docket Entry
No. 30), the court upheld plaintiff's employment agreement with
KBR, and relying on that agreement, granted KBR's motion to compel
arbitration, and dismissed the claims asserted against KBR in
plaintiff's original complaint.  The court expressly stated that
plaintiff's "claims against the United States remain in the case."[3]
Although plaintiff has filed an amended complaint (Docket Entry
No. 50), and a second amended complaint (Docket Entry No. 51),
plaintiff has not sought leave to file an amended complaint, and

_____

[1]Original Complaint of Noris G. Rogers, Docket Entry No. 1,
pp. 2-4.

[2]Id. at p. 5.

[3]Memorandum and Order, Docket Entry No. 30, p. 9.

none has been granted.  Accordingly, plaintiff's original complaint (Docket Entry No. 1) remains the live pleading in this action.

## II.  <u>United States' Motion to Dismiss</u>

The United States argues that plaintiff's claims against it should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) or, alternatively, for failure to state a claim for which relief may be granted under Rule 12(b)(6).

Although two months have passed since the United States filed its motion to dismiss, plaintiff has not responded to it.  Local Rule 7.3 provides that:  "Opposed motions will be submitted to the judge twenty days from filing without notice from the clerk and without appearance by counsel."  S.D.Tex.R. 7.3 (2000).  Local Rule 7.4 provides:

> Failure to respond will be taken as a representation of no opposition.  Responses to motions
>
> A Must be filed by the submission day;
>
> B Must be written;
>
> C Must include or be accompanied by authority; and
>
> D Must be accompanied by a separate form order denying the relief sought.

S.D.Tex.R. 7.4 (2000).  In accordance with Local Rule 7.4, the court takes plaintiff's failure to respond to the United States' motion to dismiss as a representation of no opposition to the United States' legal arguments and evidence of jurisdictional facts.  <u>See</u> <u>Eversley v. Mbank Dallas</u>, 843 F.2d 172, 173-174 (5th

-3-

Cir. 1988) (noting that when the nonmovant submits no response, the factual allegations of the movant are properly taken as true).

**A.   Standard of Review**

When a Rule 12(b)(1) motion is filed together with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits.   Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S.Ct. 2665 (2002) (citing Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam) ("Dismissal . . . for failure to state a claim is a decision on the merits . . . whereas a dismissal on jurisdictional grounds alone is not on the merits.")).   "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."   Home Builders Association of Mississippi, Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).   In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact that may be in dispute.   "Lack of subject matter jurisdiction may be found in any one of three instances:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."   Id. (citing Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)).   "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."   Ramming, 281 F.3d at 161.

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief may be granted tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Id.  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974)).  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Id. at 998.  See also Conley v. Gibson, 78 S.Ct. 99, 102 (1957) ("[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

B.   **Undisputed Facts**

Plaintiff was employed by Service Employees International, Inc. (SEII) as an electrician from approximately August 25, 2005, until his employment was terminated on November 20, 2005.[4]  SEII

_____

[4]See August 25, 2005, Data Sheet signed by plaintiff, Exhibit 1 attached to Docket Entry No. 54; August 18, 2005, (continued...)

-5-

and KBR are affiliated companies that were both subsidiaries of Haliburton, Inc. at all relevant times related to this case.[5] Plaintiff worked at a United States military installation in Kabul, Afghanistan called Camp Eggers.[6]

On September 29, 2005, plaintiff sent correspondence to the Army Inspector General's (IG) office alleging that KBR was in default of several contractual and statutory obligations regarding payment of its employees and seeking whistleblower protection from future reprisals.[7] Plaintiff's allegations were all found to be unsubstantiated.[8]

On November 12, 2005, plaintiff sent a letter to KBR demanding that KBR arrange a nonstop flight from Kabul to Houston so that he could demobilize because KBR was in violation of his contract and the living conditions were not what he had expected.[9]

---

[4](...continued)
Employment Agreement between plaintiff and SEII, Exhibit 2 attached to Docket Entry No. 54; and December 19, 2005, Charge of Discrimination signed by plaintiff and filed with the Equal Employment Opportunity Commission (EEOC), Exhibit 3 attached to Docket Entry No. 54.

[5]See June 29, 2006, Declaration of Cheryl Nethery, Exhibit 4 attached to Docket Entry No. 54.

[6]See Plaintiff's Department of the Army Inspector General (IG) case file, Exhibit 5 attached to Docket Entry No. 54.

[7]See id.

[8]See id.

[9]November 12, 2005, letter from plaintiff to Hazel E. Wood-Lockett, Exhibit 6 attached to Docket Entry No. 54.

On November 20, 2005, plaintiff left Camp Eggers without authorization in an attempt to arrange travel to the United States. Plaintiff was subsequently detained by United States Army Force Protection personnel at the North Gate of Camp Eggers.  The Camp Eggers commander ordered plaintiff removed from the camp, the plaintiff refused to leave the compound, and the military police detained plaintiff.[10]  In a counseling letter dated November 22, 2005, KBR informed plaintiff that his employment was terminated.[11] On December 8, 2005, plaintiff reported his termination to the Department of Defense (DOD) as a reprisal, and in an e-mail communication dated March 1, 2006, DOD informed the plaintiff that the investigation of his "complaint of Whistleblower reprisal" had concluded and that it "did not meet the requirements as outlined under Title 10, U.S. Code, Section 2409," because on November 9, 2005, plaintiff had informed his employer that he was demobilizing and returning to his point of origin voluntarily.[12]

## C.   Analysis

The United States argues that this court lacks subject matter jurisdiction over plaintiff's claims for breach of contract,

---

[10]See Plaintiff's Department of the Army Inspector General (IG) case file, Exhibit 5 attached to Docket Entry No. 54.

[11]See November 22, 2005, Written Counseling Letter, Exhibit 7 attached to Docket Entry No. 54.

[12]See March 1, 2006, e-mail from Leonard Trahan, Jr. to plaintiff, Exhibit 10 attached to Docket Entry No. 54.

personal injury, and illegal arrest and detention because it has not waived sovereign immunity to suit on these claims. The United States also argues that plaintiff's "Prohibition of Reprisal" claim is not cognizable because the statute on which it is based, 10 U.S.C. § 2409, does not create a private right of action.

### 1. Sovereign Immunity

Unless waived, the United States enjoys sovereign immunity from suits for damages. See United States v. Sherwood, 61 S.Ct. 767, 769-70 (1941). Congress may abrogate sovereign immunity pursuant to its § 5 enforcement power, but Congress must both unequivocally express its intent to abrogate the immunity, and Congress must act pursuant to a valid exercise of power. See Seminole Tribe of Florida v. Florida, 116 S.Ct. 1114, 1119, and 1123 (1996); United States v. King, 89 S.Ct. 1501, 1503 (1969).

### (a)  Breach of Contract

Plaintiff's breach of contract claim is based on allegations that

> [i]n contradiction to the terms and conditions of the Agreement between the Defendants; Contract No. DAAA09-02-D-0007, Task Order No. 95, the Defendants have failed and refused . . . to make payments to Plaintiff, for the prevailing wage determination as set forth by the Davis-B[]acon Act . . . to make payments to Plaintiff for Work Area Differential Uplift pay in accordance to the terms

and conditions of the "Employment Agreement" between the Defendant and Plaintiff.[13]

Citing the Tucker Act, 28 U.S.C. §§ 1346 and 1491, the United States argues that the court lacks subject matter jurisdiction over plaintiff's breach of contract claim because the plaintiff was not a party to a government contract, privity of contract does not exist, and the amount of damages that plaintiff seeks places this claim within the exclusive jurisdiction of the federal claims court.[14]

The Tucker Act, 28 U.S.C. § 1491(a)(1), provides in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The "Little Tucker Act," 28 U.S.C. § 1346(a)(2), grants concurrent jurisdiction to the district courts for such claims not exceeding $10,000.00 in value.  This court does not have jurisdiction over plaintiff's breach of contract claim under the Little Tucker Act because plaintiff's original complaint seeks sums in excess of

---

[13]Original Complaint of Noris G. Rogers, Docket Entry No. 1, pp. 2-3, ¶¶ 5-7.

[14]Defendant's Motion to Dismiss, or Alternatively, Motion for Summary Judgment, Docket Entry No. 54, pp. 6-10.

$10,000.00.[15]  See Ware v. United States, 626 F.2d 1278, 1286 (5th Cir. 1980) (plaintiff bears the burden of alleging that his contract claims do not exceed the $10,000.00 jurisdictional limit established by the Little Tucker Act).

(b)  Personal Injury Claim

Plaintiff's "Injury" claim is based on allegations that he "suffered disabling injuries as a result of the direct and/or indirect negligent actions of the Defendants."[16]  The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, is a limited waiver of the United States' sovereign immunity making the federal government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.  See United States v. Orleans, 96 S.Ct. 1971, 1975 (1976).  In order to bring a tort claim against the United States under the FTCA, plaintiff must first file an Administrative Claim with the appropriate federal agency.  See 28 U.S.C. §§ 2401(b), 2675.  Exhaustion of administrative remedies is a jurisdictional prerequisite to filing a lawsuit under the FTCA.  See Gregory v.

---

[15]Original Complaint of Noris G. Rogers, Docket Entry No. 1, p. 5.  See also Plaintiff's Motion to Transfer, Docket Entry No. 52, asserting that "[t]he United States Court of Federal Claims has exclusive jurisdiction because the Plaintiff is seeking damages in excess of $10,000.00."

[16]Id. at p. 4, ¶ 18.

-10-

Mitchell, 634 F.2d 199, 203-04 (5th Cir. 1981).  The regulations provide:

> [A] claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.

28 C.F.R. § 14.2(a).  The Fifth Circuit has held that no particular form of notice is required as long as it (1) gives the agency written notice of the claim sufficient to enable the agency to investigate and (2) places a value on [the] claim.  See Adams v. United States, 615 F.2d 284, 289 (5th Cir. 1980).  In Molinar v. United States, 515 F.2d 246, 249 (5th Cir. 1976), the court held that a letter from claimant's attorney describing the incident and enclosing receipts for the alleged damages was sufficient notice.

Plaintiff has not alleged an FTCA claim, and has neither alleged nor presented any evidence that he filed an administrative claim with the appropriate federal agency regarding his personal injury claim.  Review of the exhibits attached both to the United States' motion to dismiss and to the Plaintiff's First Amended Complaint shows that while plaintiff complained to the IG about his employer's alleged failures to compensate him properly and to provide the type of accommodations promised, none of the plaintiff's correspondence with the IG referred either to personal

injuries allegedly suffered by the plaintiff or to plaintiff's allegedly illegal arrest and/or detention.  The Fifth Circuit has stated that "[w]aivers of sovereign immunity must be strictly construed.  Section 2675 is more than a mere statement of procedural niceties.  It requires that jurisdiction must exist at the time the complaint is filed."  Gregory, 634 F.2d at 204. Because the exhaustion of administrative remedies is a jurisdictional prerequisite to filing a lawsuit under the FTCA, because the United States argues that plaintiff has not exhausted administrative remedies on any of his tort claims, and because none of the plaintiff's correspondence with the IG contains any mention of personal injury, the court concludes that it lacks subject matter jurisdiction over plaintiff's personal injury claim because plaintiff has failed to exhaust his administrative remedies for this claim.

> (c)  Arrest and Detention Claim

Plaintiff's illegal arrest and detention claim is based on allegations that he was illegally arrested and detained by the defendants, including the government.[17]  To the extent that plaintiff's claims for illegal arrest and detention are common law tort claims, the court concludes that it lacks subject matter jurisdiction over them for the same reasons explained above in

---

[17]Id. at p. 4, ¶ 17.  See also Plaintiff's First Amended Complaint, Docket Entry No. 50, p. 6 ¶ 15.

§ II.C.1(b), i.e., because plaintiff has failed to exhaust his administrative remedies.   To the extent that these claims are intended to be based on the United States Constitution the court concludes that it lacks subject matter jurisdiction over them for the reasons explained by the Supreme Court in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 91 S.Ct. 1999 (1971), and its progeny.

In Bivens, 91 S.Ct. at 2001 and 2005, the Supreme Court held that a plaintiff could seek money damages from federal officials in their individual capacity for violation of his Fourth Amendment rights.   In Federal Deposit Insurance Co. v. Meyer, 114 S.Ct. 996 (1994), the Court concluded that "the United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims," id. at 1001, and that a Bivens action could not be brought against a federal agency.   Id. at 1005-1006.   See also Correctional Services Corp. v. Malesko, 122 S.Ct. 515, 522 (2001) (Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities).   Because plaintiff asserts his claims for illegal arrest and detention against a federal agency, the United States Army, the court concludes that it lacks subject matter jurisdiction over them regardless of whether those claims are asserted under the FTCA or the United States Constitution.[18]

---

[18]Another reason why the court lacks subject jurisdiction over these claims is that the FTCA exempts "any claim arising in a foreign country."   28 U.S.C. § 2680(k).

-13-

2.   <u>Failure to State a Claim for which Relief May be Granted</u>

Plaintiff's prohibition of reprisal claim is

brought against Defendants under Title 10, United States
Code, Section 2409 for the wrongful discharge of
Plaintiff because he reported substantial violations of
law related to a defense contract, by the Employer.

The Inspector General has showed preferential treatment
toward employer and refused to properly investigate the
Plaintiff's complaint filed on December 8, 2005.[19]

Citing <u>Mayo v. Questch, Inc.</u>, 727 F.Supp. 1007 (E.D. Va.
1989), and <u>Pacheco v. Raytheon Co.</u>, 777 F.Supp. 1089 (D.R.I. 1991),
the United States argues that this claim should be dismissed
because the only two courts to have addressed the issue have
decided that 10 U.S.C. § 2409 does not provide a private cause of
action.   The court agrees.

In <u>Mayo</u>, 727 F.Supp. at 1008-09, a corporate officer was
terminated after he sought to rectify improprieties committed by
several of the corporation's directors.   The officer brought suit
against the corporation and its directors based in part on 10
U.S.C. § 2409.   The district court granted the defendant's motion
to dismiss the § 2409 count on the ground that the statute did not
afford an individual employee a private cause of action.   <u>Id.</u> at
1008.   In deciding whether § 2409 implicitly created a private
cause of action, the <u>Mayo</u> court relied on the four-factor test set
out in <u>Cort v. Ash</u>, 95 S.Ct. 2080, 2087 (1975).   The <u>Cort</u> factors
are:

---

[19]Original Complaint of Noris G. Rogers, Docket Entry No. 1,
p. 4, ¶¶ 15-16.

(i)  Is the plaintiff one of the class for whose especial benefit the statute was enacted?

(ii)  Is there any indication of legislative intent, explicit or implicit, either to create or deny such a remedy?

(iii) Is implying a private cause of action consistent with the underlying purpose of the legislative scheme?

(iv)  Is the cause of action one that is traditionally left to state law to remedy?

Id. at 2088.  See also Mayo, 727 F.Supp. at 1013.  A thorough analysis of these factors led the Mayo court to conclude that § 2409 does not imply a private right of action.  Mayo, 727 F.Supp. at 1015.

In Pacheco, 777 F.Supp. at 1089, the court came to the same conclusion.  There, the plaintiff was a security guard whose duties included monitoring the defendant's facilities and reporting security and safety violations.  In 1987, allegedly in response to his reporting of violations, the plaintiff's car tires were slashed and an anonymous phone call advised a fellow guard to "tell Pacheco he'd better back off or he'll get more than two flat tires next time."  Shortly thereafter the plaintiff's car window was shattered.  In December of 1987 the plaintiff was promoted to guard sergeant and continued to report violations until his discharge three years later in December of 1990.  Plaintiff filed suit seeking reinstatement and compensatory and punitive damages under the federal whistleblower statute for employees of defense contractors, 10 U.S.C.A. § 2409.  In support of its motion for judgment on the pleadings, the defendant argued that the plaintiff

-15-

had failed to present a question of federal law because the federal whistleblower statute, 10 U.S.C. § 2409, did not afford a private cause of action.  After applying the Cort four-factor test to the facts alleged in Pacheco's complaint, the court concluded that 10 U.S.C. § 2409 did not accord a private right of action.

Many courts have explicitly recognized that "[p]articular emphasis has been placed on the second factor and without evidence of congressional intent, a private cause of action cannot be found."  Acara v. Banks, 470 F.3d 569, 571 & n.1 (5th Cir. 2006) (citing Till v. Unifirst Federal Savings and Loan Association, 653 F.2d 152, 157 (5th Cir. 1981) ("In interpreting federal statutes, Cort and its progeny all focus upon the 'ultimate issue' of whether it was Congress' intent to create a private remedy.").  In order to determine whether an implied right of private action exists under a statute, "the judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.  Statutory intent on this latter point is determinative." Acara, 470 F.3d at 571.

The question of legislative intent begins with the language of the statute itself.  See also Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 100 S.Ct. 242, 245 (1979).  The statute states in pertinent part:

> (a)  Prohibition  of  reprisals.--An  employee  of  a
> contractor may not be discharged, demoted, or otherwise
> discriminated against as a reprisal for disclosing to a
> Member of Congress or an authorized official of an agency
> or the Department of Justice information relating to a
> substantial  violation  of  law  related  to  a  contract

-16-

(including the competition for or negotiation of a contract).

(b)  Investigation of complaints.--A person who believes that the person has been subjected to a reprisal prohibited by subsection (a) may submit a complaint to the Inspector General of an agency. Unless the Inspector General determines that the complaint is frivolous, the Inspector General shall investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person, the contractor concerned, and the head of the agency.

(c)  Remedy and enforcement authority.--

    (1)  If the head of the agency determines that a contractor has subjected a person to a reprisal prohibited by subsection (a), the head of the agency may take one or more of the following actions:

        (A)  Order the contractor to take affirmative action to abate the reprisal.

        (B)  Order the contractor to reinstate the person to the position that the person held before the reprisal, together with the compensation (including back pay), employment benefits, and other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken.

        (C)  Order the contractor to pay the complainant an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that were reasonably incurred by the complainant for, or in connection with, bringing the complaint regarding the reprisal, as determined by the head of the agency.

    (2)  Whenever a person fails to comply with an order issued under paragraph (1), the head of the agency shall file an action for enforcement of such order in the United States district court for a district in which the reprisal was found to have occurred.  In any action brought under this paragraph, the court may grant appropriate relief,

including injunctive relief and compensatory and
exemplary damages.

(3)  Any person adversely affected or aggrieved by
an order issued under paragraph (1) may obtain
review of the order's conformance with this
subsection, and any regulations issued to carry out
this section, in the United States court of appeals
for a circuit in which the reprisal is alleged in
the order to have occurred.  No petition seeking
such review may be filed more than 60 days after
issuance of the order by the head of the agency.
Review shall conform to chapter 7 of title 5.

10 U.S.C.A. § 2409.

Plaintiff submitted a complaint first to the Army IG in
September of 2005,[20] and then to the DOD IG on December 8, 2005.[21]
Once a complaint has been submitted to the IG, the IG is required
to determine if the complaint is frivolous.  If the complaint is
deemed to be frivolous, the agency is not obligated to take further
action.   If it is not deemed frivolous, the statute requires
further investigation and reporting of the complaint.  10 U.S.C.
§ 2409(b).  In this case, the Army IG found the plaintiff's
September 2005 complaint to be frivolous and unsubstantiated.[22] The
DOD IG investigated plaintiff's post-termination December 8, 2005,
complaint and determined that plaintiff's termination was not a

_____

[20]See Plaintiff's Department of the Army Inspector General (IG)
case file, Exhibit 5 attached to Docket Entry No. 54, p. 4.   See
also Exhibit B attached to Plaintiff's First Amended Complaint,
Docket Entry No. 50, p. 4.

[21]See March 1, 2006, e-mail from Leonard Trahan, Jr., to
plaintiff, Exhibit 10 attached to Docket Entry No. 54, and
Exhibit C attached to Plaintiff's First Amended Complaint.

[22]See Plaintiff's Department of the Army Inspector General (IG)
case file, Exhibit 5 attached to Docket Entry No. 54, p. 3.

"reprisal" because plaintiff had already informed his employer that he intended to sever his employment relationship and return to his point of origin.[23]

Subsection (c) establishes a system that empowers "heads of agencies" to take action against a contractor who is found to have engaged in reprisals against a whistleblower.  10 U.S.C. § 2409(c). This subsection allows the head of an agency to intervene in these situations and order the contractor to abate the reprisal including reinstating the whistleblower with back pay and any other benefit denied to the whistleblower.  Neither subsection (b) nor subsection (c) provides an aggrieved employee the right to bring a private cause of action as an alternative to the remedial scheme established by the statute.  When Congress intends to provide a private cause of action under federal law, it may do so explicitly. See, e.g., the whistleblower protection provisions of the False Claims Act, 31 U.S.C. § 3730(h) ("An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.").  Because the statute provides an administrative remedial scheme that does not include recognition of a private right of action, the court concludes that the remedial scheme provided by the statute weighs against the likelihood that Congress intended the statute to create a private cause of action as well.  See Mayo, 727 F.Supp. at 1014 ("Congress

---

[23]See March 1, 2006, e-mail from Leonard Trahan, Jr., to plaintiff, Exhibit 10 attached to Docket Entry No. 54, and Exhibit C attached to Plaintiff's First Amended Complaint.

is not likely to have intended the implication of a private right [of action] where there already exist other remedies, whether federal or state."). Like the courts in <u>Mayo</u> and <u>Pacheco</u>, the court concludes that 10 U.S.C. § 2409 does not provide a private right of action, and that the plaintiff's assertion of a claim based on this statute is not cognizable for this reason. Accordingly, the court concludes that plaintiff's "Prohibition of Reprisal" claim should be dismissed under Rule 12(b)(6) because it fails to state a claim for which relief may be granted.   <u>See</u> <u>Ramming</u>, 281 F.3d at 161.

### III.  **Plaintiff's Motion to Transfer**

Plaintiff moves the court to transfer this action to the United States Court of Federal Claims (Docket Entry No. 52). Plaintiff argues that the "transfer of this case to the United States Court of Federal Claims is permitted under Rule 3.1(a) of the RCFC,"[24] because he "is seeking damages in excess of $10,000.00,"[25] and because "the adverse actions that the Plaintiff is complaining of all happened overseas, this case is not sounding in tort."[26]   The United States argues that plaintiff's motion to transfer should be denied because the Federal Claims

---

[24]Plaintiff's Motion to Transfer Case to the United States Court of Federal Claims, Docket Entry No. 52, ¶ 1.

[25]<u>Id.</u> at ¶ 2.

[26]<u>Id.</u> at ¶ 3.

Court does not have subject matter jurisdiction over the claims alleged in plaintiff's complaint.

**A.    Standard of Review**

When a court finds that it lacks jurisdiction over a particular controversy, it may dismiss the action over that controversy or transfer the action to any court in which the action could have been brought at the time it was filed if it is in the interests of justice to do so.  <u>See</u> 28 U.S.C. § 1361.  <u>See</u> <u>Christianson v. Colt Industries Operating Corp.</u>, 108 S.Ct. 2166, 2178-79 (1988) (recognizing that once a court determines that it lacks subject matter jurisdiction it may either dismiss the action or transfer it to a court that has jurisdiction).  <u>See also</u> <u>Hayes</u> <u>v. Gulf Oil Corp.</u>, 821 F.2d 285, 291 (5th Cir. 1987) (same).

**B.    Analysis**

1.    <u>Tort Claims</u>

Citing the Tucker Act, 28 U.S.C. § 1491, the United States argues that plaintiff's claims for personal injury and for illegal arrest and detention should not be transferred to the Court of Federal Claims because they are tort claims over which that court lacks subject matter jurisdiction.  Also citing the Tucker Act, 28 U.S.C. § 1491(a)(1), the plaintiff argues in his motion to transfer that "[s]ince the adverse actions that the Plaintiff is complaining of all happened overseas, this case is not sounding in tort,

therefore the United States Court of Federal Claims has exclusive jurisdiction in this matter."[27]

The jurisdiction of the Court of Federal Claims is governed by the Tucker Act, which provides in pertinent part that

> [t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).   The Tucker Act clearly states that jurisdiction of the Federal Court of Claims is limited to cases "not sounding in tort."   28 U.S.C. § 1491(a).   The fact that the adverse actions of which plaintiff complains happened overseas does not negate the fact that his claims for personal injury and illegal arrest and detention sound in tort.[28]   Because the jurisdiction of the Court of Federal Claims does not extend to plaintiff's tort

---

[27]Plaintiff's Motion to Transfer Case to the United States Court of Federal Claims, Docket Entry No. 52.

[28]Although plaintiff has not cited any authority for his assertion that his claims do not sound in tort because the adverse actions on which they are based occurred overseas, to the extent that he may be relying on that portion of the FTCA that exempts "any claim arising in a foreign country," 28 U.S.C. § 2680(k), any such reliance would be misplaced.   The fact that claims arising in foreign countries are exempted from the FTCA does not mean that they are not tort claims but, instead, only that the waiver of sovereign immunity provided by the FTCA does not extend to such claims.   See Sosa v. Alvarez-Machain, 124 S.Ct. 2739, 2748 (2004) (recognizing claim for false arrest as "tortious" and 28 U.S.C. § 2680(k) as barring claims arising in foreign countries from being brought under the FTCA).

claims for personal injury and illegal arrest and detention, the court concludes that plaintiff's motion to transfer these claims to that court should be denied because transfer would not cure the jurisdictional defect in this court.

    2.  <u>Breach of Contract Claim</u>

Citing the Tucker Act the United States argues that plaintiff's breach of contract claim should not be transferred to the Court of Federal Claims because plaintiff never had an express or implied contract with the United States and absent such a contract, that court lacks subject matter jurisdiction over his breach of contract claim.

Plaintiff's breach of contract claim is based on two contracts: (1) "the Agreement between the Defendants; Contract No. DAAA09-02-D-0007, Task Order No. 95,"[29] and (2) the "Employment Agreement" between KBR and the plaintiff.[30] Although plaintiff's original complaint did not elaborate on the grounds for the breach of contract claim, in his first amended complaint plaintiff explained that the contract between the United States and his employer was known as the Logistics Civil Augmentation Program (LOGCAP) contract and that he

       is alleging specific statutory and regulatory violations
       by the Government in connection with the LOGCAP Contract
       for failing to pay Plaintiff's Employer the overtime

---

[29]Original Complaint of Noris G. Rogers, Docket Entry No. 1, p. 2, ¶¶ 5-6.

[30]<u>Id.</u> at p. 3, ¶ 7.

rates and prevailing wage rates according to the Davis-B[]acon Act as required by the LOGCAP Contract . . . As an intended Third-Party Beneficiary, Plaintiff seeks declaratory relief and a writ of mandamus, to compel the Procuring Contracting Officer for the Government to perform his duty and assure that proper wage payments are made to Plaintiff.[31]

(a)  Privity

To maintain suit against the United States for an alleged breach of contract, the plaintiff must allege and prove that he had an "express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). See Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998), cert. denied sub nom. Sherman Park Apartments v. United States, 120 S.Ct. 62 (1999). The Court of Federal Claims has interpreted this language as requiring the plaintiff to be in "privity of contract" with the United States. Id. Privity of contract has been defined as "that connection or relationship which exists between two or more contracting parties." Etchey v. United States, 15 Cl.Ct. 152, 154 (1988). Privity of contract is a jurisdictional prerequisite to suit under the Tucker Act in the Court of Federal Claims because when it is established, a court can find that the United States has waived its sovereign immunity to suit. See National Leased Housing Association v. United States, 105 F.3d 1423, 1436 (Fed. Cir. 1997) (stating that the inevitable result of finding privity of contract is to "trigger a waiver of sovereign immunity"). If this court concludes that

---

[31]Plaintiff's First Amended Complaint, Docket Entry No. 50, pp. 1-2, ¶ 1.

there is no privity of contract between the plaintiff and the United States, it must also conclude that there is neither an express nor implied contract between the United States and the plaintiff.  _Etchey_, 15 Cl.Ct. at 154.

The allegations in plaintiff's original complaint show that plaintiff was not a party to the LOGCAP contract but, instead, merely an employee of KBR.  The Court of Federal Claims has held that employees of corporations contracting with the government "have no contractual relationship with the Government and therefore cannot maintain a suit against the United States."  _Robo Wash, Inc. v. United States_, 223 Ct.Cl. 693 (1980).  Since plaintiff's original complaint alleges only that there existed a contract between his employer and the United States, the Court of Federal Claims would not have subject matter jurisdiction over his breach of contract claim because as an employee of a government contractor plaintiff was not in privity of contract with the United States.

(b)  Third-Party Beneficiary Claim

In his First Amended Complaint plaintiff contends that he can enforce the pay provisions of the LOGCAP contract because he is a third-party beneficiary to that contract.[32]  Third-party beneficiary status is an exception to the privity requirement that applies in situations where the contract reflects the express or implied

---

[32]See Plaintiff's First Amended Complaint, Docket Entry No. 50, p. 2, ¶ 1.

intention of the parties to benefit the third-party.   State of
Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997).
The third-party beneficiary analysis is commonly referred to as the
"intention-to-benefit test."   See Schuerman v. United States, 30
Fed.Cl. 420, 433 (1994) (recognizing that the contract must
"reflect[] the express or implied intention of the parties to
benefit the third-party").   Although "[a]ny such intent is
[generally] found through an examination of the parties' entire
contractual relationship . . . and is ascertained by determining
whether the beneficiary would be reasonable in relying on the
promise as intending to confer a right on him," Sallee v.
United States, 41 Fed.Cl. 509, 514 (1998) (citing Schuerman, 30
Fed.Cl. at 433, and Montana, 124 F.3d at 1273), both plaintiff's
original complaint and the first amended complaint that plaintiff
filed without leave of court demonstrate that his pay claims are
grounded on his assumption that the contract at issue included a
clause requiring his employer to pay him in accordance with the
Davis-Bacon Act.[33]

_____

[33]See Original Complaint of Noris G. Rogers, Docket Entry
No. 1, p. 1 ("This suit is by an individual to secure performance
by an Employer and the United States of America for specific . . .
contractual obligations to make timely payments for . . . Davis-
B[]acon Wage Rates . . .). See also Plaintiff's First Amended
Complaint, Docket Entry No. 50, p. 2 & n.1 ("The Government
include[s] contract clauses such as these in its Federal Contracts
with Contractors to assure that the Contractor will pay its
Employees—American Workers—wages that are fair and just as
determined by the Department of Labor's Wage and Hour Division.").

Assuming without deciding that the underlying contract contained a provision requiring plaintiff's employer to pay its employees in accordance with the Davis-Bacon Act, the existence of such a provision would not establish subject matter jurisdiction in the Court of Federal Claims over plaintiff's breach of contract claim because the Davis-Bacon Act does not create a private right of action.  See United States v. Capeletti Brothers, Inc., 621 F.2d 1309, 1315 (5th Cir. 1980).  The issue presented by the allegations contained in plaintiff's first amended complaint is whether plaintiff may circumvent the unavailability of a private right of action under the Davis-Bacon Act by styling his claim as one for third-party beneficiary relief.  Similar arguments were advanced by the plaintiffs and rejected by the courts in Grochowski v. Ajet Construction Corp., 1999 WL 688450 (S.D.N.Y. 1999), and Danielson v. Burnside-Ott Aviation Training Center, Inc., 941 F.2d 1220 (D.C. Cir. 1991).

In Grochowski, 1999 WL 688450, the plaintiffs brought a state law contract claim for unpaid wages allegedly due under government contracts subject to the Davis-Bacon Act's prevailing wage provision.  The court dismissed the plaintiffs' claim upon concluding that "common law remedies were not available to create a cause of action under the federally funded contracts because the applicable statute for purposes of the federal contracts, the Davis-Bacon Act, does not afford plaintiffs a private right of action."  Id. at *3.

In _Danielson_, 941 F.2d at 1220, the plaintiff asserted a RICO claim to recover the prevailing wage rate contained in a government contract subject to the Service Contract Act.  The court first found that the Service Contract Act does not afford employees a private right of action.  _Id._ at 1226-27.  The court also found that the plaintiff's decision to frame his claim as a RICO claim, instead of  a claim brought under the Service Contract Act, could not shield the claim from dismissal.  The court explained that "[t]o frame the action for such remedy in terms of RICO adds nothing."  _Id._ at 1228-29.  Thus, the court held that a "private civil action, even couched in RICO terms, will not lie for an alleged breach of the [Service Contract Act]."  _Id._ at 1229.

Applying the reasoning of _Grochowski_ and _Danielson_ to this case, the court concludes that plaintiff's claim, no matter how creative the choice of nomenclature, is in reality a private claim for back wages under the Davis-Bacon Act, a statute that does not allow such a claim.  Because the Davis-Bacon Act does not provide plaintiff a private right of action, the court concludes that plaintiff's motion to transfer this claim to the Court of Federal Claims should be denied because transfer would not cure the lack of subject matter jurisdiction in this court.  _See also_ _Workinger v. John L. Jersey & Son, Inc._, 188 F.3d 517 (9th Cir. 1999) (unpublished opinion) (holding that district court lacked subject matter jurisdiction over plaintiff's claim for breach of contract

as a third-party beneficiary based on the Davis-Bacon Act because that statute did not provide a private right of action).

## IV.  Conclusions and Order

For the reasons explained above, the court concludes that plaintiff's claims for breach of contract, personal injury, and illegal arrest and detention should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, that plaintiff's claim for prohibition of reprisal should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted, and that plaintiff's motion to transfer to the Court of Federal Claims should be denied because transfer to that court will not cure the jurisdictional defects in this court.  Accordingly, Defendant's Motion to Dismiss (Docket Entry No. 54) is **GRANTED**, and Plaintiff's Motion to Transfer Case to the United States Court of Federal Claims (Docket Entry No. 52) is **DENIED**.

**SIGNED** at Houston, Texas, on this 23rd day of April, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE